[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
BEFORE: THE HONORABLE SHERIDAN MOORE, JUDGE
 MEMORANDUM OF DECISION
THE COURT: This is the manner of Michelle Serra verses Hamlet Serra, FA97-0116028.
The Court herd evidence in regards to this matter, which is a dissolution matter, first on May 5th of this year, and then subsequent evidence was heard on June 21st of this year.
The Court indicated to the parties on the June 21st date that the Court would issue a decision in this matter and that decision would be forwarded to the parties. It is the intention of the Court, having made it's decision on the record today, that a CT Page 12072 transcript of this proceedings will be ordered, presented to the Court; at which the Court will sign the transcript, and it will become the Memorandum of Decision in this matter.
The Court having reviewed the evidence given to it on those previous days, the written material presented to the Court by way of seven exhibits for the plaintiff and seven exhibits for the defendant, a review of the financial affidavit of the parties, the Court is also in possession of the affidavit concerning the minor children, and the health insurance form as required by the statute.
The Court, having considered all of the evidence in light of Connecticut General Statutes 46b-81 and 82, makes the following findings:
The jurisdiction in the — the Court has jurisdiction in this matter and all the statutory requirements have been met; that the allegations of the complaint are proven and are true, and the marriage is dissolved on the grounds of irretrievable breakdown. The parties are considered singled and unmarried.
The custody of the two minor children, David Lawrence Serra, date of birth March 30, 1991; and Lindsey Marie Serra, date of birth April 5, 1995, shall be held jointly by the parties. The primary residence of the two minor children shall be with the mother.
The defendant, father, shall have visitation with the minor children, and that visitation shall be reasonable rights of frequent and liberal visitation, including but not limited to, every other weekend from Friday at 7 p. m. to Sunday at 5 p. m.
The parties agree that the transfer point for the minor children for visitation with their father shall be in New Jersey. The mother shall transport the children to the parents of the defendant for visitation, and the defendant, father, will return the children to plaintiff's brother's home in New Jersey.
Holiday visitation shall be as follows:
Beginning with Thanksgiving, the parties — of this year — the parties shall alternate holidays, Thanksgiving of 1999, being the defendant; Christmas, December 24th at 5 p. m. to December 25th at 2 p. m., shall be the plaintiff's; Christmas December 25th at 2 p. m. to December 26th at 11 a.m., shall be the defendant's; New CT Page 12073 Years, plaintiff; Easter, defendant; Mother's Day plaintiff; Memorial Day, plaintiff; Father's Day, defendant; 4th of July, defendant; Labor Day, plaintiff.
In addition, the defendant shall have one week of the children's school vacation and four weeks of the children's summer vacation. The defendant shall notify the plaintiff of his election for the summer vacation by March 1st of each year.
The defendant shall pay child support in the amount of $226 per week. The Court notes that this is slightly below what the Court believes is the appropriate guideline figure for the defendant.
The Court was presented with evidence that indicated that the defendant has a weekly income of $860 per week gross, and that his child support obligation based on that weekly gross income would be $258; however, the Court has on opted for the $226 per week child support payment by virtue of the consideration to the defendant for some of his transportation costs back and forth to New Jersey to exercise his visitation.
The Court notes that the plaintiff's transportation costs were done — her move to South Jersey was done, to some degree based on a need, but it was done by her decision and therefore the Court has given — does not equalize the transportation cost. So the child support payment is $226 per week. That is to be secured by way of immediate wage execution.
The Court makes a further finding that there was no direct testimony as an arrearage on any child support payment. There was testimony by the plaintiff that she believed there were missed payments and, in fact, because of missed payments she was forced to move to Southern New Jersey.
However, she did not indicate to the Court exactly what the figure was. If there is a presentation to the defendant, which indicates an arrearage is now due and owing, that arrearage is to be paid by the defendant at the rate of 20 percent of the current order or $25 per week until said arrearage is paid.
The defendant shall maintain such Blue Cross Blue Shield or major medical and dental policy or their reasonable equivalent as may be available to him through his place of employment on behalf of the minor children in accordance with Connecticut General Statute 46b-84 for as long each child remains eligible for said CT Page 12074 coverage. The parties shall share equally the cost of any unreimbursed medical, dental, orthodontic, psychiatric, psychological, optical, or any other medical expenses for the minor children.
In accordance with the child support guidlines as revised by — as revised August 1, 1999 any daycare expenses should be shared equally by the parties should that become a reality in the future.
The Court believes that this case is an alimony case given the lack of work history by the plaintiff since 1991 that the — and the young age of the minor children. The Court is going to order the defendant to pay alimony in the amount of $115 per week to the plaintiff for a period of four years. That alimony is non-modifiable.
The defendant shall maintain his life insurance policy currently held and shall name the children as irreparable beneficiaries.
The parties will exchange year-to-date pay stubs four times a year at the end of March, June, September and December and will also exchange tax returns on or before April 15th of each year so long as the defendant's obligation for child support and/or alimony remains.
The parties will split the 401K plan currently held by the defendant through Cigna Retirement and Investment Services. The defendant will convey that interest to the plan by way of a Qualified Domestic Relation Order. Said paperwork for the order shall be completed by the defendant within 60 days of this date of the judgement.
The parties currently own real property known as "64 Millstone Drive, Marlborough, Connecticut." The Court was presented with evidence from an appraiser indicating that the appraised value of the property was $175,000. The Court was also presented with evidence from a market analysis that indicated that the listing price for the property would be between 215,000 and 225,000, and that the belief would be that the home would then sell somewhere between 210 and 220.
The Court recognizes that an appraised value of a home while, in fact, is a scientific analysis is not necessarily — while it is a guage of the value of a home, may not be, in fact, the value of CT Page 12075 a home and likewise, that a market analysis, again, and a listing price with an expectation is a little less scientific and a little more subject to fluctuations.
The Court makes a finding that the value of the home given a reasonable expectation of sell, the condition of the home, the location of the home, the compatible sales, that the value of the property jointly owned by the parties is a $187,500.
Before the Court can divide the property between the parties, the Court has to address the indebtness currently listed on the property and considered by the Court in its evaluation of the evidence.
The parties agree that there is a first mortgage on the property of $93,500 still due and owing at the time of the testimony presented by the Court. What became of some major concern was the mortgage of approximately $55,000 that's alleged to be due and owing to the defendant's mother. The Court as evidenced by plaintiff's Defendant's Exhibit A finds that there was a note executed by the parties on June 4, 1993 evidencing the $50,000 to the defendant's mother; that subsequently, by Defendant's C there was a letter signed by the parties dated April 14, 1994 reaffirming the $50,000 borrowed by the parties previously; and that the parties indicate by this letter that they were fully aware that this $50,000 is to be paid back in full by us as we are able or else it is to be paid back in full upon the sell of our house. Then, in addition, the note of April 14, 1994 indicates that they have received an additional $5,100 from the defendant's mother for taxes making a total due and owing to the defendant of 55,124.
The Court normally indicates that payments made by parents to their children will be considered gifts without and indication either by written paper or by substantial testimony that these moneys were not intended to be gifts. I think, clearly, here, the note, the promissory note of June 4, 1994, and the letter, the notarized letter, April 14, 1994, indicates that these gifts, these moneys were not gifts. They were, in fact, loans that were intended to be repaid.
Additionally, the Court heard the testimony of Mrs. Silva Serra, the mother of the defendant, who indicated that she did not intend this money to be a gift; it was a loan that she upon the giving of the original $50,000 had sought legal advise as to what to do in regards to the money because she felt she wanted to CT Page 12076 protect it for her other children in regards to their inheritances. And she was advised by a lawyer that the way to protect the money was to, in fact, get it in writing via promissory note that it was to be repaid. And obviously by Defendant's Exhibit A, that's exactly what she did.
So the Court having already found a value to the home jointly owned by the parties of $187,500 subtracts from that amount the first mortgage of 93,500 and the second lien or incumbencies upon the property — though not perfected by placing a mortgage on the property — but, clearly, by the date of the letter that the money was intended to be recouped from the home, the Court will also deduct the 5,500 due and owing to the defendant's mother. That leaves a balance of $39,000 of equity. That equity shall be split equally between parties, the defendant is to pay to the plaintiff the sum of $19,500 within 60 days of the day of the judgement.
The Court will note, also at this time, that the defendant had asked that his — he be given consideration for the, approximately, $15,000 that he placed into the purchase of the home when the parties bought the home in 1993 as that $15,000 came from a premarital asset.
The Court will indicate that he has not given any consideration to the defendant for that because the Court believes that that, in fact, was a gift to the marriage at the time and, in fact, would not be entitled to the full amount but would consider that the — he made a gift to the plaintiff but indicating — by placing that into a jointly owned asset.
Likewise, the Court has given no consideration to the defendant's request that he be given credit for — or that his mother be given credit for the $25,000 that approximately represents the mortgage payments for the last two years. The Court, again, indicates that the defendant's mother had no obligation to pay that, that the Court would view that as her gift to her son to have paid those mortgages. That was not her obligation, and she took that on voluntarily.
The Court will further note the plaintiff had indicated that she believed that the money that the Court has given credit for, the $55,000, will not be repaid by the defendant and, therefore, he gains the benefit of that non-repayment. The Court has no evidence at this point to indicate that that money will not be repaid. All the exhibits and evidence that the Court has indicates that there is an expectation that the money will be CT Page 12077 repaid to the defendant's mother.
The plaintiff shall have as her own, and the defendant shall waive any right to the 1997 state and federal income tax refund of, approximately, $2,000. The plaintiff and defendant shall file a joint federal and state tax return for the tax year 1998 and shall share equally any tax refunds.
The defendant shall have the federal and state tax exemption for the two minor children until such time as it becomes — so long as it remains that he can gain the benefit of that tax exception because the plaintiff is not currently working. If it becomes — if the plaintiff becomes fully employed and that the tax liability to her needs to be also addressed in regards to exemption with the defendant having the older child, David, and the plaintiff having the younger child, Lindsey.
The defendant, husband, shall assume and be responsible for and hold the plaintiff harmless for all family debts including credit card debts as listed on his financial statement incurred prior to the plaintiff moving to New Jersey in September of `98.
Each party will be responsible for all other liabilities as listed on their respective financial affidavit. And each shall indemnify and hold the other harmless in regards to those liabilities.
The parties will divide their personal property to their satisfaction; however, the plaintiff, wife, will receive the following items for herself: the school papers for her son; the easel in the kitchen; the tree house slide on the deck; the playpen, highchair, and walker in the daughter's room; and her belongings left in the closet, in the den and foyer, including the leather jacket; the toys for her daughter that are in the bedroom closet; and the toys in the garage. The wife shall have the right to remove these items within 60 days within — of the date of judgement or a reasonable time to be established by the parties.
Those are the orders of the Court.
 CERTIFICATION
I hereby certify that the foregoing pages contain a true and accurate copy to the best of my ability of the aforementioned matter, heard before the Honorable Sheridan Moore, Judge, of the CT Page 12078 Superior Court, in Hartford, Connecticut, on August 19, 1999.
Dated in Hartford, Connecticut, on the 25th day of August, 1999.
Kelly Laughery, Court Monitor
Sheridan Moore, Judge